SUCCESSORS OF ESMORIS & CO., PLAINTIFFS AND APPELLEES, *v.* D. S. STERN & CO., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action for Damages.

No. 2331.—Decided June 21, 1921.

CONTRACT—DAMAGES—DENIAL OF CONTRACT.—Where a party to an alleged contract absolutely denies its existence and is sued for damages for failure to perform, the other contracting party need not wait for the alleged time for performance to arrive. The latter's right of action arises immediately when the contract is denied.

ID.—ESTOPPEL—AGENT.—Where a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority.

The facts are stated in the opinion.

*Messrs. Chas. Hartzell* and *F. Ramírez de Arellano* for the appellant.

*Messrs. Benet & Souffront* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

D. S. Stern & Co. are merchants. Successors to Esmoris & Co. sued them in damages for failure to perform an alleged contract for the delivery of rice. The appellees introduced proof tending to show that appellants made M. E. Alcaráz & Co. their agents ostensibly or finally, as appellees maintain, with full authority on the part of the latter to bind their principal in the contract of sale to the said appellees. Appellants maintain that the agents had no such authority and that they were limited to making or accepting offers to be ratified by the said appellants and that no such ratification took place.

To the complaint in this case a demurrer was filed, substantially on the ground that the suit was prematurely filed as the time for delivery had not arrived at the date of the filing of the complaint. The complainants amended their complaint and their new claim filed is of a date later than the time for the delivery of the goods. We might entertain some doubts in certain cases whether a premature suit could be remedied by an amended complaint, but as the defendants absolutely refused to deliver the goods and as an averment to this effect appeared both in the original and in the amended complaint, the court was justified in overruling the demurrer in this regard. Where a party to an alleged contract absolutely denies its existence and is sued for damages for failure to perform, the other contracting party need not wait for the alleged time for performance to arrive. The latter's right of action arises immediately when the contract is denied. 6 R. C. L. 102, and 23 R. C. L. 1409. The results of this beneficial rule is illustrated by the facts of the case, inasmuch as appellees sold the alleged merchandise, or its equivalent, to a third person and an existing obligation arose against them. This disposes of the first alleged error.

The other assignment is that the court erred in finding that the appellants were bound to deliver the alleged goods. There was testimony to the effect that on April 18, 1919, D. S.

Stern & Co. wrote a somewhat ambiguous letter to M. E. Alcaraz & Co. whereby the latter were authorized to effect sales for the district of Mayagüez on commission. In a later clause of the letter the agents are requested to cable in case they find someone interested, in which case the writers offer to cable back the lowest prices. There is nothing in the letter to show clearly, if at all, that the agents were to submit the name of the intending purchaser, or that there should be no sale until an offer was submitted and accepted, the position taken by appellant. Nor does the latter necessarily contradict the theory of the appellants that sales could be made after such ratification or confirmation.

Be this as it may, on a certain date M. E. Alcaraz & Co. offered to sell to the appellees one thousand sacks of rice at $6.10 a sack, which the latter accepted. By some mistake the offer was transmitted to the appellants at $7.10. They accepted the offer in these words: "We confirm Esmoris." In point of fact, before that time the agents, anticipating ratification, or perhaps because they thought they had the authority, had made a bill of sale or "vendi" to Esmoris & Co. This acceptance was communicated to Esmoris & Co. and the contract was, momentarily at least, considered closed. When the appellants discovered the mistake they wrote to M. E. Alcaraz & Co., saying that the price of rice had gone up and they would hold the agents responsible for the difference of $1 a lot. Then began negotiations by which M. E. Alcaraz & Co. sought to have Esmoris & Co. accept the increased figure of $7.10. They refused. The refusal was communicated to the appellants. Finally the agents and Esmoris & Co. came together and Esmoris & Co. agreed to accept at $7.10, but holding M. E. Alcaraz & Co. responsible for the difference. Meanwhile D. S. Stern & Co., considering that there had been no meeting of minds, consigned the merchandise, already shipped, to another firm or firms. There is testimony tending to show that M. E. Alcaraz & Co. showed the cable of

confirmance to Esmoris & Co. and also the cable in which Stern & Co. said they would hold their agents responsible for their mistake. There is no question that when the confirmation came Esmoris & Co. had no knowledge of the mistake made by M. E. Alcaraz & Co. Apparently on the strength of this alleged contract Esmoris & Co. sold, or undertook to sell, 500 sacks of rice to another firm at $10.50 a sack. This was the market price, as we gather, up to the time that the appellants denied the existence of the contract.

There is some doubt whether there was any contract between the parties up to the time of the cable of confirmance. This apparently ratified the act of the agents in making the memorandum of sale. Also Stern & Co. wrote to Esmoris & Co. confirming the sale, but at $7.10. So that there is no doubt that the agents had the authority to sell at $7.10. They quoted a wrong figure, but they were unquestionably the agents. Likewise, when the principals discovered the mistake they did not then deny the existence of the contract, but held the agents responsible. Under the circumstances we think the following principle clearly applicable:

"Where a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority." 21 R. C. L. 907.

See also 2 C. J. 564.

When Esmoris & Co. first undertook to buy, the market price was around $5.75, the proof tends to show. There is no question that Stern & Co. came to their definite decision not to deliver to Esmoris & Co. when the market price had risen to $10 plus. Meanwhile their agents were negotiating and finally reached an agreement. If there was any lack of authority before, we think it clear that the agents had au-

thority to close at $7.10, as shown by numerous letters and cables wherein the agents are shown as trying to effect a settlement at $7.10 and their authority to do so was not disputed.

No error being assigned to the award of damages, which were calculated on the difference between $7.10, the adjusted contract price, and the market price of $10.50, the judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.